UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                                        :
LUZ E. SANTIAGO SANCHEZ,                                                 :
                                                                        :
                                    Plaintiff,                           :
                                                                        :
                -v-                                                      :
                                                                        :
COMMISSIONER OF SOCIAL SECURITY,                                         :
                                                                        :
                                    Defendant.                           :
                                                                        :
------------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/8/2022____

20-cv-7653 (LJL)

OPINION AND ORDER

LEWIS J. LIMAN, United States District Judge:

Defendant Commissioner of Social Security ("Defendant" or "Commissioner") moves for

judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Dkt. No. 17.

Defendant argues that the determination of the Administrative Law Judge ("ALJ") that Plaintiff

Luz Santiago Sanchez ("Plaintiff" or "Santiago Sanchez") was not disabled under the Social

Security Act was supported by substantial evidence and free from legal error. Dkt. No. 18 at 9–

13; Dkt. No. 24 at 1, 8. Defendant asks that the Court affirm the Commissioner's decision. Dkt.

No. 18 at 14.

Plaintiff opposes Defendant's motion and cross-moves for judgment on the pleadings

pursuant to Federal Rule of Civil Procedure 12(c). Dkt. No. 19. Plaintiff argues that the ALJ's

determination that Plaintiff was not disabled under the Social Security Act and denial of her

application for disability benefits under Title II of that act was not supported by substantial

evidence. *Id.* at 15–24. Plaintiff also contends that the ALJ erred in applying the incorrect legal

standard for determining whether Plaintiff's medically determinable impairments were severe.

*Id.* at 12–15. Plaintiff asks that the Court deny Defendant's motion on for judgment on the

pleadings, grant Plaintiff's cross-motion for judgment on the pleadings, and remand the matter to

an ALJ for a new hearing.  *Id.* at 25.

For the following reasons, the Commissioner's motion for judgment on the pleadings is

granted and Plaintiff's motion for judgment on the pleadings is denied.

## BACKGROUND

Santiago Sanchez was born in 1966 and was 46 at the alleged onset date of her disability

on May 12, 2012.[1]  Dkt. No. 14 ("AR") at 217.  Plaintiff worked as a corrections officer for the

New York City Department of Corrections from March 1991 to June 2011, when she retired

from her position.  *Id.* at 123, 126, 221.  Plaintiff lived in Pennsylvania from 2012 to 2014 and

moved back to New York in 2016.  *Id.* at 125.  She filed an application for disability insurance

benefits in 2017, reporting that cramps and discomfort had limited her ability to work from

February 2, 2012 onward.  *Id.* at 220.  Plaintiff appealed her initial denial of disability benefits

and described symptoms including: inability to lift heavy objects and run; inability to sit or stand

for a long period; hip and lower back pains; difficulty sleeping; and anxiety.  *Id.* at 242.  Plaintiff

alleges that she became disabled in 2012 as a result of those symptoms, some of which she

alleges were caused by the previous placement of an inferior vena cava ("IVC") filter in 2010 to

treat deep vein thrombosis in her left leg.  Dkt. No. 19 at 3–5; *see also* AR at 123.  At her hearing

before the ALJ, Plaintiff testified that she experienced pains from the IVC filter starting before

she retired from her job as a corrections officer in 2011 and that the pain kept her from doing her

---

[1] In her brief in support of her cross-motion, Plaintiff argues that there is evidence that her disability started "as early as January 2012." Dkt. No. 19 at 4–5, 5 n.8.  Plaintiff referenced January 1, 2012 on her Social Security Disability form as the date that symptoms—including worsening breathing problems, lower back and hip pain, and other limitations—began.  *Id.* at 4; *see also* AR at 242.  The Court refers to May 12, 2012 as the onset date consistent with the alleged onset date reported on Plaintiff's disability report filed July 3, 2017.  *See* AR at 217–18. The difference in potential onset dates does not affect the analysis or outcome in this case.

job. *Id.* at 124.  The ALJ determined that Plaintiff's last insured date under the requirements of

the Social Security Act—the last date on which she would be eligible to receive disability

benefits under the act—was December 31, 2016. [2]  AR at 17.  The ALJ also determined that

Plaintiff did not engage in substantial gainful activity between the onset date (May 12, 2012) and

the last insured date (December 31, 2016).  *Id.*  He nonetheless determined that she did not have

a severe impairment or combination of impairments, and therefore was not "under a disability"

as defined by the Social Security Act.  *Id.* at 18, 21.

## I.    Medical Evidence

The administrative record contains medical evidence from periods before Plaintiff's last

insured date of December 31, 2016 and after her last insured date.  The administrative record

also contains information from the period before Plaintiff's alleged onset date of May 12, 2012.

*See* AR at 217.

### A.    Medical Evidence Prior to May 12, 2012 Onset Date

In January 2010, Santiago Sanchez was admitted to the hospital with shortness of breath,

back pain, and swelling in her left leg that was later diagnosed as deep vein thrombosis ("DVT").

AR at 298.  During her five-day hospital admission, Plaintiff had a DVT filter[3] placed.  *Id.*  Her

discharge summary notes that she should "avoid activities which can cause trauma or bleeding"

due to the blood-thinning medication she was prescribed.  *Id.*  Follow-up ultrasound evaluations

in 2010 found no evidence of DVT or pneumonia.  *Id.* at 387–88.  On May 11, 2012, medical

notes from ultrasounds of Santiago Sanchez's upper abdomen and chest indicated an echogenic

---

[2] Plaintiff and the Commissioner agree that the last insured date is December 31, 2016.  *See* Dkt.
No. 19 at 3, 10.
[3] The DVT filter is also referred to as an "IVC filter.

(fatty) liver and a subcutaneous edema in the right breast. *Id.* at 385–86. No other concerns were noted, and a six-month follow-up sonogram was recommended. *Id.*

**B.      Medical Evidence Between May 12, 2022 Onset Date and December 31, 2016**

On June 14, 2012, Plaintiff complained of right knee pain and received radiographs that were unremarkable. AR at 384. In November 2012, Plaintiff received unremarkable radiographs of her sacrum and coccyx and received a radiograph of her lumbar spine that revealed mild facet arthropathy. *Id.* at 382–83. On October 11, 2015, Santiago Sanchez was admitted to the hospital complaining of pain in her right leg and knee. AR at 285. She was diagnosed with a Baker's cyst in her right knee. *Id.* at 288. The medical record indicates that Plaintiff did not complain of symptoms other than her leg and knee pain, including abdominal pain or back pain. *Id.* at 286.

**C.      Medical Evidence After December 31, 2016**

The record contains medical evidence after Plaintiff's last insured date of December 31, 2016, some of which relates to the conditions Santiago Sanchez sought medical treatment to address prior to December 31, 2016. On March 30, 2017, Plaintiff sought treatment for diarrhea and constipation from Montefiore Medical Center and was diagnosed with irritable bowel syndrome. AR at 309–10. Plaintiff sought care on August 28, 2017, for concerns regarding her IVC filter and the possibility of its removal. *Id.* at 312. On that date, Dr. Marcia Morgan referred Plaintiff for an evaluation for the removal of her IVC filter. *Id.* On September 7, 2017, Plaintiff saw Dr. Michael Vitti for evaluation of her IVC filter, complaining of fatigue, shortness of breath, and right hip pain. *Id.* at 315. Dr. Vitti's notes state that Plaintiff "denies any abdominal pain." *Id.* On September 18, 2017, Santiago Sanchez received a cardiovascular evaluation that identified her as overweight and recorded no other symptoms, including no abdominal pain or leg cramps. AR at 318. On October 4, 2017, Dr. Carol Grant examined Plaintiff and recommended a CT scan with contrast after a CT scan revealed "possible

perforation of the inferior vena cava [sic] into the aorta." *Id.* at 320. Santiago Sanchez

complained of right hip pain and abdominal pain during an October 10, 2017 appointment with

Dr. Morgan. *Id.* at 326. Plaintiff saw Dr. Issam Koleilat at Montefiore Medical Center on

October 25, 2017 for an evaluation for IVC filter removal. *Id.* at 367. She reported right hip

pain but denied abdominal or back pain, though she reported abdominal discomfort after doing

several sit-ups. *Id.* Dr. Koleilat recommended that the IVC filter be removed due to potential

long-term complications, but he did not think that the filter was causing Plaintiff's symptoms.

*Id.* at 368. Plaintiff did not make a decision on the filter removal at that appointment. *Id.* at 369.

Plaintiff submitted additional medical records to the Appeals Council after the ALJ

determined that she was not disabled. AR at 2. The Appeals Council found that the evidence

within those records, described below, did not show a reasonable probability of changing the

outcome of the ALJ's decision. *Id.* On October 11, 2017, Santiago Sanchez saw an orthopedic

surgeon at Montefiore for right hip pain. *Id.* at 61–62. The surgeon's notes indicate that Plaintiff

reported ongoing pain rated ten out of ten for over five years. *Id.* at 62. The surgeon believed

that she had chronic right hip strain. *Id.* at 63. Plaintiff again visited Dr. Morgan on February 8,

2018 for her right hip pain. *Id.* at 328. At that appointment, Plaintiff noted that her IVC filter

was out of place and that she was considering the removal procedure. AR at 329. The medical

records also reflect a series of appointments from July 2018 to July 2020 for pain complaints

related to Plaintiff's right thumb, right elbow, and neck. *Id.* at 5–7, 80–84, 93–94, 97, 100–02;

*see also id.* at 390–425 (detailing complaints of "localized" pain, treatment by injection, and

follow-up instructions). Notes from an MRI scan of Plaintiff's spine dated January 29, 2020

indicate central disc protrusion and mild to moderate degenerative changes of the cervical spine.

AR at 9.

## II.      Non-medical Evidence

There are three primary pieces of non-medical evidence: Plaintiff's report of daily activities dated July 18, 2017, her disability report appeal dated August 30, 2017, and her testimony at the ALJ hearing on May 29, 2019. *See generally* AR at 121–27, 227–39, 241–47. Plaintiff reported in July 2017 that she was unable to do any physical or strenuous activities for fear of her IVC filter breaking or moving. *Id.* at 229. She reported that she spent time with her grandchildren, performed normal household chores, and shopped for groceries once per month. *Id.* at 228, 230–31. Plaintiff also described an inability to sleep on her back without getting breathless, her fear of lifting heavy objects due to potential IVC filter breakage, breathing difficulties after climbing stairs, and a need to rest for ten minutes after walking two and a half blocks. *Id.* at 229, 233–34.

Plaintiff's disability report appeal dated August 2017 describes medical conditions ongoing since 2012. AR at 242. Plaintiff describes worsening breathing problems and stated that she could not "do any type of heavy lifting, jogging, running, going up and down stairs, talking for a long period without gasping for air." *Id.* Plaintiff states additional symptoms have existed since January 3, 2013, including lower back pains, hip pains, headaches, and fatigue. *Id.* In a question regarding change in activities since Plaintiff's prior report, she describes an inability to drive or be in a car for more than thirty minutes, walk and do various types of physical activity, and similar pains to those described above. *Id.* at 245.

After Plaintiff's application for disability benefits was denied, she requested a hearing before an Administrative Law Judge ("ALJ") appealing the denial. *See* AR at 146–47. At her May 29, 2019 hearing before ALJ Jason Miller, Santiago Sanchez testified as to her symptoms. *See id.* at 121–27. She stated that her IVC filter had been causing her serious pain in her back and body. *Id.* at 123. She testified that the pain from her filter started before she retired in 2011

6

and that she could not perform her job as a corrections officer due to the pain.  *Id.* at 124.  She also testified that she retired for ordinary causes, not due to disability.  *Id.* at 123.

### III.    ALJ Decision

ALJ Miller found that Plaintiff did not engage in substantial gainful activity from May 12, 2012 to December 31, 2016.  AR at 17.  The ALJ also found that Plaintiff had multiple medically determinable impairments, including mild degenerative joint disease, status-post deep venous thrombosis in the left lower extremity, fatty infiltration of the liver, myoma of the uterus, and clinical obesity.  AR at 18.  The ALJ found that those impairments, considered in singly or in combination, did not limit Plaintiff's ability to perform basic work-related activities, making her impairments not severe.  *Id.*  In reaching his determination, the ALJ referenced Santiago Sanchez's testimony as to her symptoms, her account of her daily activities, and the medical evidence prior to and after her last insured date.  *Id.* at 19–20.  The ALJ concluded that Plaintiff's subjective testimony did not "suggest greater limitations than those which can be discerned from a review of her medical records" and determined that she was not disabled for purposes of the Social Security Act.  *Id.* at 20–21.

## PROCEDURAL HISTORY

Santiago Sanchez applied for disability insurance benefits on June 23, 2017.  AR at 209.  Her application was denied on August 10, 2017.  *See id.* at 134–39.  Plaintiff requested an ALJ hearing on August 30, 2017, and the hearing was held on May 29, 2019.  *Id.* at 146–47; *see generally id.* at 110–33.  The ALJ issued an unfavorable decision on July 3, 2019.  *Id.* at 12.  Plaintiff appealed the decision to the Appeals Council and filed additional medical evidence from 2020.  *See generally* AR at 5–9.  The Appeals Council denied Plaintiff's request for review on July 30, 2020, making the ALJ's decision the final decision of the Commissioner of Social Security.  *Id.* at 1.  Plaintiff filed a complaint in this Court challenging the final decision on

September 17, 2020.  *See* Dkt. No. 2.  On September 24, 2021, the Commissioner filed a motion

for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) and an

accompanying memorandum of law.  Dkt. Nos. 17–18.  Plaintiff filed a memorandum of law in

opposition and a cross motion for judgment on the pleadings in her favor on November 9, 2021.

Dkt. No. 19.  Defendant filed a reply on December 17, 2021.  Dkt. No. 24.

## LEGAL STANDARD

A judgment on the pleadings under Rule 12(c) is appropriate where "the movant

establishes that no material issue of fact remains to be resolved" such that a judgment on the

merits can be made "merely by considering the contents of the pleadings."  *Guzman v. Astrue*,

2011 WL 666194, at *6 (S.D.N.Y. Feb. 4, 2011) (citing *Juster Assocs. v. City of Rutland*, 901

F.2d 366, 269 (2d Cir. 1990)).  The Court has the "power to enter, upon the pleadings and

transcript of the record, a judgment affirming, modifying, or reversing the decision of the

Commissioner, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g) (made

applicable through 42 U.S.C. § 1383(c)(3)).  Put another way, the Court has discretion to

determine whether or not a remand is appropriate in evaluating the ALJ's decision.  *Butts v.*

*Barnhart*, 388 F.3d 377, 385 (2d Cir. 2004) (quoting § 405(g)); *see Melkonyan v. Sullivan*, 501

U.S. 89, 98 (1991).

The Court may overturn the ALJ's decision where it is based on legal error or is not

supported by substantial evidence in the record.  Substantial evidence is "more than a mere

scintilla"—it means "such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citations

omitted); *see Burgess v. Astrue*, 537 F.3d 117, 127–28 (2d Cir. 2008) (citing *Perales*, 402 U.S. at

401); *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (same).  Though this standard is

deferential to an ALJ's finding, an ALJ's disability determination must be reversed or remanded

if it is not supported by substantial evidence or if it contains legal error.  *See Rosa v. Callahan*,

168 F.3d 72, 77 (2d Cir. 1999).

The Commissioner must follow a sequential five-step process when determining whether

a claimant is disabled for the purpose of the Social Security Act.  20 C.F.R. § 404.1520(a)(4).

"If at any step a finding of disability or nondisability can be made, the SSA [Social Security

Administration] will not review the claim further."  *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003);

*see also* 20 C.F.R. § 404.1520(a)(4).  At step one, the claimant must demonstrate that she is not

engaging in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(i).  At step two, the claimant

must show that she has a "severe impairment" limiting her ability to do work-related activities.

*Id.* § 404.1520(a)(4)(ii); *see Anselm v. Comm'r of Soc. Sec.*, 737 F. App'x 552, 553 (2d Cir.

2018) (summary order).  The Commissioner then considers whether the claimant's impairment is

"per se disabling," entitling her to disability benefits (step three) or, in the alternative, whether

the claimant retains the residual functional capacity to return to past work (step four).  *See*

*Anselm*, 737 F. App'x at 553–54; 20 C.F.R. § 404.1520(a)(4)(iii-iv).  There is an additional

"duration requirement" that an impairment must have lasted or be expected to last for a

continuous period of at least twelve months to render a claimant disabled for the purposes of the

Social Security Act.  20 C.F.R. § 404.1509.  The claimant has the burden of proof for the first

four steps.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).  At step five, if the Commissioner

reaches it, the burden shifts to the Commissioner to show that jobs that the claimant could

perform exist in "significant numbers in the national economy."  *Anselm*, 737 F. App'x at 554.

Step two of the disability determination concerns whether a claimant has a medically

severe impairment.  *See Bowen*, 482 U.S. at 140–41.  A severe impairment is an impairment or

combination of impairments that "significantly limits [the claimant's] physical or mental ability

to do basic work activities." 20 C.F.R. § 404.1520(4)(c). Basic work activities include physical

functions such as walking, standing, sitting, seeing, and hearing; communication functions such

as understanding instructions and responding to supervision; and use of judgment. *See* AR at 18.

The threshold for demonstrating a severe impairment is low. *See Dixon v. Shalala*, 54 F.3d

1019, 1030 (2d Cir. 1995) ("[T]he severity regulation is valid only if applied to screen out *de*

*minimis* claims."). That is, step two is intended to eliminate only "the very weakest cases."

*McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014). This low standard reflects the principle

that the Social Security Act requires an individualized vocational determination, and only

claimants with "slight abnormalities that do not significantly limit any 'basic work activity'" can

be denied prior to that determination. *Bowen*, 482 U.S. at 158 (O'Connor, J, concurring) ("The

statute does not permit the Secretary to deny benefits to a claimant who may fit within the

statutory definition without determining whether the impairment prevents the claimant from

engaging in either his prior work or substantial gainful employment that, in light of the

claimant's age, education, and experience, is available to him in the national economy.").

## DISCUSSION

Plaintiff challenges the ALJ's decision on multiple grounds. She argues that the ALJ

committed a legal error by failing to credit her testimony regarding her disability, penalizing her

for not seeking medical treatment, selectively choosing evidence, failing to adequately develop

the record, and substituting his own judgment for medical opinions. *See generally* Dkt. No. 19 at

15–24. Plaintiff also contends that the ALJ improperly applied the severity standard, arguing

that had the ALJ applied the proper *de minimis* threshold, he would have proceeded to step three

of the analysis. Dkt. No. 19 at 15 ("Certainly, applying the accepted threshold, Ms. Santiago had

a severe injury and the ALJ should have gone on to the other steps of the process."). The Court

considers each in turn.

10

Plaintiff contends that the ALJ failed to credit her testimony regarding her symptoms, cherrypicked evidence, and substituted his own judgment for medical opinions. Dkt. No. 19 at 17, 19, 22. The ALJ must consider symptoms, including pain, in determining whether a claimant's medical impairment is severe. *See* 20 C.F.R. § 404.1529(d)(1); *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010) (summary order) (describing the requirement that ALJs consider symptoms and the two-step process for consideration). A two-step process is required: First, the ALJ must determine whether the claimant has a medically determinable impairment that could reasonably be expected to produce the symptoms described. *See* 20 C.F.R. § 404.1529(b). Next, the ALJ must consider the extent to which the claimant's described symptoms are consistent with the objective medical evidence. *See id.*; *Campbell v. Astrue*, 465 F. App'x. 4, 7 (2d Cir. 2012) (summary order) (explaining that, while the ALJ must take claimant's reports of pain into account, the ALJ need not accept the claimant's report "without question" (quoting *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010))).

ALJ Miller referenced the above process and found that Plaintiff did have a medically determinable impairment that could have reasonably produced her symptoms. AR at 18, 20. However, the ALJ then determined that Plaintiff's testimony during the hearing of serious pains in her back and throughout her body was not consistent with objective medical evidence indicating doctor's visits for localized pain and largely "unremarkable" X-rays prior to the last insured date. *Id.* at 19. Specifically, the ALJ noted that "[w]hile some laboratory tests were abnormal . . . there is no evidence that she was complaining of any unremitting symptoms during this period . . . ." *Id.* at 20. The ALJ also relied on medical notes that Plaintiff was able to perform some exercise in 2017 and her testimony that she raised her children from 2012 to 2016 to determine that her symptoms did not suggest greater limitations than the objective medical

11

evidence. *Id.* at 20.  The ALJ's determination did take into account Plaintiff's testimony: the

ALJ considered the testimony's consistency with objective medical evidence.

Even if there is evidence in the factual record that would support Plaintiff's contentions,

the Commissioner's decision must be upheld if substantial evidence also supports his conclusion.

*Quinones on Behalf of Quinones v. Chater*, 117 F.3d 29, 36 (2d Cir. 1997) ("Where an

administrative record supports disparate findings, we must accept the ALJ's factual

determinations.").  Plaintiff disputes the ALJ's characterization of the objective medical

evidence as "benign" and "isolated."  Dkt. No. 19 at 11.  She also claims that the ALJ improperly

substituted his own judgment by referring to a lumbar spine x-ray as "otherwise unremarkable."

*Id.* at 23.  However, the medical evidence itself mirrors the ALJ's description.  *See, e.g.*, AR at

286 (noting "localized" symptoms at Plaintiff's 2015 visit); *id.* at 382 (describing Plaintiff's x-

ray as "OTHERWISE UNREMARKABLE"); *id.* at 386 (noting echogenic liver and "no visceral

mass" and "[n]o gross aortic pathology" identified in a 2012 examination).  The Court's role is

not to reweigh evidence; it is to review the ALJ's determination to ensure that it is supported by

substantial evidence.  *See Coleman v. Shalala*, 895 F. Supp. 50, 54 (S.D.N.Y. 1995) ("[T]he

court must affirm the Secretary's final determinations so long as they are supported by

substantial evidence in the factual record.").  The Court concludes that the ALJ considered both

the objective and subjective medical evidence in his determination that Plaintiff's medical

impairments were not severe.  *Cf. Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009)

(upholding district court's finding that substantial evidence supported the ALJ's determination

that plaintiff's subjective complaints were insufficient to establish disability when unsupported

by objective medical evidence).  No more is required.

Plaintiff also argues that the ALJ improperly penalized her for not seeking medical treatment. Dkt. No. 19 at 18. Plaintiff testified that she did not seek medical treatment during the time she was living in Pennsylvania because her health insurance did not include doctors she could see. AR at 125 (stating that her health insurance was "limited" and did not allow her to "find the proper doctors" in Pennsylvania). The ALJ characterized the medical evidence as "intermittent and sparse," but there is no indication that Plaintiff's lack of medical care was a factor in the ALJ's determination. *Id.* at 21. Rather, the ALJ considered the objective medical evidence from the insured time period in conjunction with Plaintiff's reported symptoms. *See, e.g., id.* at 19 ("[T]he objective medical evidence of record dated on or before the remote date last insured does not show significant ongoing medical issues."). The ALJ attached significance to the fact that, when Plaintiff did seek medical care, she did not require inpatient admission or aggressive medical treatment, nor did she complain of unrelenting symptoms during her doctors' visits. *Id.* at 20. This is consistent with the requirement that ALJs consider treatment, including medication and other methods to relieve symptoms, when evaluating claimant's subjective symptoms. *See* 20 C.F.R. § 404.1529(c). Considering the outcome of medical visits that Plaintiff *did* seek is different from considering Plaintiff's failure to seek *additional* doctors' visits. Here, the ALJ did the former. That the ALJ's determination references the lack of significant interventional medical care before the last insured date, *id.* at 21, reflects that his focus was on the level of care required rather than the frequency with which Plaintiff sought care.

Plaintiff argues that the ALJ did not fulfill his duty to affirmatively develop the record. Dkt. No. 19 at 20. The ALJ has a duty to develop the administrative record consistent with the non-adversarial nature of a benefits hearing, even when the claimant is represented by counsel.

*See Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996) (noting that the ALJ's duty to develop the record "arises from the Commissioner's regulatory obligations to develop a complete medical record before making a disability determination").  Plaintiff's claims are twofold: that the ALJ failed to seek additional medical records and that he failed to question her during the hearing as to the extent of her symptoms and their effects.  Dkt. No. 19 at 21–22; *see also Pena v. Astrue*, 2008 WL 5111317, at *8 (S.D.N.Y. Dec. 3, 2008) ("The ALJ's duty to develop the administrative record encompasses not only the duty to obtain a claimant's medical records and reports but also the duty to question the claimant adequately about any subjective complaints and the impact of the claimant's impairments on the claimant's functional capacity.").  When gaps exist in the administrative record, the ALJ must develop it as to claimant's medical history.  *See, e.g.*, *Rosa*, 168 F.3d at 79 (remanding where "numerous gaps in the administrative record . . . should have prompted the ALJ to pursue additional information regarding [claimant's] medical history."); *Blash v. Comm'r of Soc. Sec. Admin.*, 813 F. App'x 642, 645 (2d Cir. 2020) (summary order) (remanding when ALJ failed to seek out post-hospitalization medical records).  However, the ALJ need not search to supplement the record when no gaps exist.  *See Schillo v. Kijakazi*, 31 F.4th 64, 76 (2d Cir. 2022) (holding that the ALJ did not fail to develop the record when the claimant did not identify missing medical records that should have been included).

Plaintiff's contention that the ALJ failed to seek additional medical records is unfounded. At the hearing, the ALJ accepted additional medical records submitted by Plaintiff's counsel into the record and asked Plaintiff's counsel whether more records were forthcoming.  AR at 115–16, 118.  The ALJ considered the records Plaintiff submitted after the hearing in his evaluation of the objective medical evidence.  *Id.* at 15, 18 (identifying documents submitted after the hearing and admitted into evidence as exhibits 7F and 8F and referencing the same).  Further, Plaintiff

14

testified that she did not see the doctor during 2012, 2013, and 2014 while she was living in Pennsylvania. *Id.* at 125, 131. The ALJ did not err in failing to seek records that he had no reason to believe existed. *See Yucekus v. Comm'r of Soc. Sec.*, 829 F. App'x 553, 558 (2d Cir. 2020) (summary order) (holding that the ALJ had not failed to fulfill the duty to develop the medical record when plaintiff's counsel represented that the record only lacked documents that were submitted before the ALJ closed the record); *Curley v. Comm'r of Soc. Sec. Admin.*, 808 F. App'x 41, 44 (2d Cir. 2020) (summary order) (holding that the ALJ did not fail to develop the record when the ALJ asked plaintiff at the beginning of the hearing whether anything was missing and plaintiff did not state that medical records were missing).

The argument that the ALJ should have asked Plaintiff additional questions about her symptoms to develop the record is a closer question. The ALJ's questioning of Plaintiff was brief and general. The ALJ asked Plaintiff what disabilities she had, what treatment she sought, and where her pains were. *See generally* AR at 123–26. He also asked how she spent her days and gave her an open-ended opportunity to explain "anything else you want to tell me [the ALJ]" about her symptoms. *See id.* at 126, 130. Plaintiff contends that the ALJ should have asked follow-up questions, arguing that "[t]he answers to the questions might have provided more support for the disability claim." Dkt. No. 19 at 22.

Plaintiff's argument fails for two reasons. The first is that the ALJ did ask questions about Plaintiff's symptoms. *See* AR at 123–26 (inquiring as to the onset, location, and treatment of Plaintiff's symptoms). Courts in this District have remanded cases when the ALJ failed to ask *any* questions of plaintiffs. *See, e.g.*, *Maldonado v. Comm'r of Soc. Sec.*, 524 F. Supp. 3d 183, 194 (S.D.N.Y. 2021) (remanding when the ALJ "asked essentially no specific questions" about the location, duration, or frequency of symptoms experienced by a pro se claimant claiming

15

numerous mental conditions); *Miranda v. Barnhart*, 2006 WL 6174093, at *13 (S.D.N.Y. Feb. 1, 2006) (remanding when the hearing was "replete with instances where the ALJ neglected to follow up" on testimony regarding plaintiff's symptoms); *see also Hankerson v. Harris*, 636 F.2d 893, 895 (2d Cir. 1980) (holding that the ALJ erred by "never question[ing] plaintiff about his subjective symptoms" of heart pains and shortness of breath); *Spain v. Comm'r of Soc. Sec.*, 2021 WL 6808295, at *15 (S.D.N.Y. Dec. 28, 2021) (finding that because the ALJ did not neglect entire categories of subjective complaints and medical opinions addressed plaintiff's difficulties the ALJ sufficiently developed the record as to plaintiff's subjective symptoms); *Pena*, 2008 WL 5111317, at *9 (holding that ALJ did not fail to develop the record by not asking plaintiff why she was prescribed a short-term medication to address depression when no medical record reflected treatment for any mental illness). That is not the case here.

Second, the administrative record contained Plaintiff's statements to the Social Security Administration describing her pain and limitations. *See, e.g.*, AR at 242 (detailing breathing problems, physical limitations and pain from 2012 and 2013 on an SSA disability report appeal form dated July 18, 2017). The ALJ's failure to elicit additional descriptions did not prejudice Plaintiff because the ALJ had the relevant information before him in the administrative record at the time of his decision. *Cf. Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010) (denying remand despite error in excluding evidence because evidence was "essentially duplicative" of evidence considered by the ALJ); *Nelson v. Apfel*, 131 F.3d 1228, 1235–36 (7th Cir. 1997) (holding that despite a "marginal hearing" at which the ALJ "abdicated his responsibility" to explore all relevant facts, supplemental written information provided the ALJ with a "fairly complete picture" of the claimant's symptoms).

Finally, Plaintiff argues that the ALJ applied the incorrect legal standard in finding her

medical impairment not severe.  Plaintiff contends that, given ALJ's finding that she did have

medical impairments, those impairments should have been considered severe because they are

not *de minimis* abnormalities.  Dkt. No. 19 at 15.  In support of her argument that the ALJ

committed a legal error by misapplying the severity standard, Plaintiff invokes a recent District

of Connecticut opinion characterizing the denial of benefits at step two of the disability analysis

as "unusual."  Dkt. No. 19 at 14; *see also Lyn C. v. Kijakazia*, 3:20-cv-00545, ECF No. 21, Ex. A

(D. Conn. Sept. 27, 2021).  Adopting Plaintiff's account of the severity standard would collapse

the two-step process for evaluating subjective symptoms.  Rather than considering the extent to

which a claimant's symptoms are consistent with objective medical evidence, an ALJ would be

categorically required to find a severe medical impairment at step two of the analysis upon a

determination that a claimant has a medically determinable impairment that *could* limit a

claimant's basic work activities.  Social Security Administration regulations reject this approach.

*See* 20 C.F.R. § 404.1521 (distinguishing between a determination of medical impairment that

"must be established by objective medical evidence from an acceptable medical source" and a

determination that the impairment is severe, which includes consideration of symptoms and

diagnosis).  An ALJ must specifically consider whether a claimant's impairment limits her

ability to perform basic work-related activities.  20 C.F.R. § 404.1522 (defining a non-severe

impairment as one that "does not significantly limit your physical or mental ability to do basic

work activities" and providing examples including physical activities such as walking, standing,

and lifting; capacities for seeing, hearing, and speaking; understanding and carrying out

instructions; and responding to usual work situations); *see also id.* § 404.1523(c) ("If we do not

find that you have a medically severe combination of impairments, we will determine that you

17

are not disabled.").  The "mere presence of a disease or impairment" is not alone sufficient to satisfy step two; it must also cause more than minimal limitations in the claimant's ability to perform work-related functions.  *Pulos v. Comm'r of Soc. Sec.*, 346 F. Supp. 3d 352, 358 (W.D.N.Y. 2018) (quoting *Taylor v. Astrue*, 32 F. Supp. 3d 253, 256 (N.D.N.Y. 2012) (internal quotations omitted).  *But see O'Connor v. Saul*, 2020 WL 1242408, at *3 (W.D.N.Y. Mar. 16, 2020) ("An ALJ, though, cannot properly deny a claim at step two of the sequential evaluation unless the medical evidence clearly indicates that the claimant's impairments, when combined, are not severe." (internal quotations omitted)).  Thus, the ALJ did not commit legal error by failing to automatically find Plaintiff's impairments were severe after finding that she had medically determinable impairments.

## CONCLUSION

For the foregoing reasons, the Court affirms the final decision of the Commissioner.  The motion for judgment on the pleadings is GRANTED; Plaintiff's cross-motion for judgment on the pleadings is DENIED.

The Clerk of Court is respectfully directed to close the case.


SO ORDERED.


Dated: August 8, 2022
      New York, New York                                     LEWIS J. LIMAN
                                          United States District Judge